226 N.J. Super. 559 (1988)
545 A.2d 206
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
OMAR BAILEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 6, 1988.
Decided July 21, 1988.
*561 Before Judges PETRELLA and BAIME.
Alfred A. Slocum, Public Defender, attorney for appellant (John Musarra, designated counsel, on the brief).
W. Cary Edwards, Attorney General, attorney for respondent (Annmarie Cozzi, Deputy Attorney General, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents a question of first impression. At issue is whether a defendant accused of having committed an offense under the Graves Act (N.J.S.A. 2C:43-6 c) must be advised at the time of his guilty plea that he is subject to a mandatory parole ineligibility term. We hold that such information is crucial to a full understanding of the consequences of a plea and it is thus incumbent upon the trial court to apprise the defendant of the mandatory loss of parole opportunity provided by the Act.
The salient facts are not in dispute. Defendant was charged in a multi-count indictment with kidnapping (N.J.S.A. 2C:13-1 b(1)), attempted murder (N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3), *562 aggravated assault (N.J.S.A. 2C:12-1 b(1)), first degree robbery (N.J.S.A. 2C:15-1) and possession of a firearm for an unlawful purpose (N.J.S.A. 2C:39-4 a). The indictment stemmed from a series of incidents which allegedly occurred on June 21, 1983. In the early morning hours, defendant, who was then 15 years old, and Kevin Fothergill commandeered a limousine taxicab driven by Reggie Glover and, at gunpoint, robbed the driver of his cash and various articles of clothing. According to defendant's account, he held the gun to Glover's head as Fothergill drove the limousine from the Bronx, New York to Teaneck, New Jersey. When Glover attempted to run away, defendant fired three shots at the fleeing victim. Glover was ultimately able to escape, however, without injury. Defendant and Fothergill later abandoned Glover's automobile.
On May 15, 1984, defendant, pursuant to an agreement with the State, entered a retraxit plea of guilty to attempted murder, first degree robbery and possession of a firearm for an unlawful purpose.[1] Under the agreement, the prosecutor was to recommend that concurrent sentences be imposed and was to seek dismissal of the counts charging aggravated assault and kidnapping. During the course of the proceedings, defendant acknowledged that he fully understood the terms of the plea agreement and expressed satisfaction with the services he had received from his attorney. In the colloquy which followed, defendant was advised by the trial judge of the sentences that could be imposed. Defendant was told that the judge "may impose... a period of parole ineligibility which may be up to one-half" of the actual sentence. (Emphasis added). It is undisputed that defendant was never apprised by the court of the applicability of N.J.S.A. 2C:43-6 c, which mandates imposition of a period of parole ineligibility as to certain specified *563 crimes committed with a firearm. However, defendant signed a form statement in which he acknowledged that "the court may be required to or can impose a term of parole ineligibility...."
At sentencing, on June 22, 1984, the trial judge imposed a custodial term of 15 years, one-half of which must be served without parole eligibility. In pronouncing sentence, the judge did not relate the custodial term to any specific charge. Instead, he merely stated that this was the sentence "on each count." However, the judgment of conviction is inconsistent with this thesis. It provides that a sentence of 15 years was imposed on the attempted murder conviction. As a part of that sentence, the judgment states that defendant is to serve seven and one-half years without parole eligibility. The judgment further reflects that concurrent ten-year sentences were imposed on the convictions for armed robbery and possession of a firearm for an unlawful purpose.
Defendant did not initially file a direct appeal from his convictions. Rather, on March 2, 1987, defendant filed a pro se "motion for reconsideration of sentence and post-conviction relief." In his accompanying memorandum of law, defendant contended that (1) the indictment was defective because it referred to two statutes, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3, in charging him with attempted murder, (2) the sentences imposed were excessive and illegal and (3) he was denied the effective assistance of counsel. Although defendant requested assignment of an attorney, the trial judge ignored this application, and, in a brief letter opinion, denied post-conviction relief, finding no deprivation of the Sixth Amendment right to the effective assistance of counsel.
Ten days later, on April 27, 1987, the Public Defender filed a motion for leave to appeal nunc pro tunc from the original judgment of conviction. In the accompanying certification, it *564 was stated that the assistant deputy public defender who had represented defendant at the plea proceeding had not received a request to file an appeal. However, defendant produced a letter dated October 5, 1986, which was attached to his motion papers, addressed to the Appellate Section of the Public Defender's Office, requesting that an appeal be filed in his behalf. In any event, we granted defendant's motion on May 13, 1987. Defendant thereafter filed a separate appeal from the order denying his motion for reconsideration of sentence and post-conviction relief. The separate appeals were subsequently consolidated.
Defendant asserts that (1) he should be permitted to withdraw his plea of guilty because he was not advised of the mandatory loss of parole opportunity provided by the Graves Act, (2) his plea to attempted murder was not supported by an adequate factual basis, (3) the trial court erred by failing to merge his conviction for possession of a firearm for an unlawful purpose into that for armed robbery, (4) his sentence was manifestly excessive and illegal and (5) the petition for post-conviction relief should not have been summarily dismissed without assignment of counsel and a hearing.

I.
We first address defendant's argument that his guilty plea was involuntarily made without a full understanding of its attendant sentencing consequences. Although the question is novel, we have no difficulty in holding that a trial court must inform a defendant of the mandatory parole ineligibility term provided by N.J.S.A. 2C:43-6 c before accepting a plea of guilty to a Graves Act offense.
We begin with the premise that plea bargaining is now "firmly institutionalized in this State as a legitimate, respectable and pragmatic tool in the efficient and fair administration of *565 criminal justice." State v. Taylor, 80 N.J. 353, 360-361 (1979). See also State v. Marzolf, 79 N.J. 167, 182 (1979); State v. Brown, 71 N.J. 578, 582 (1976); State v. Nichols, 71 N.J. 358, 371 (1976). As we recently pointed out, "[w]e in New Jersey are not alone in this development." State v. Cullars, 224 N.J. Super. 32, 39 (App.Div. 1988). Other jurisdictions have adopted plea bargaining as an appropriate "accommodation of the conflicting interests of society and persons accused of crimes and as a needed response to an ever-burgeoning criminal docket." Ibid. See also Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432 (1971); State v. Taylor, supra, 80 N.J. at 361. While some continue to harbor reservations concerning the practice, "`the fact is that the guilty plea and the often concomitant plea agreement are important components of this country's criminal justice system.'" Bordenkircher v. Hayes, 434 U.S. 357, 361-362, 98 S.Ct. 663, 667, 54 L.Ed.2d 604, 609 (1978), reh'g den. 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978), quoting Blackledge v. Allison, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136, 145 (1977).
Fundamental to the practice of plea bargaining is the rule "that the guilty plea must be made voluntarily, knowingly, and intelligently." State v. Howard, 110 N.J. 113, 122 (1988). In this context, we recently had occasion to say that "[t]o be successful, it is essential that the terms of the agreement be clear and unequivocal and fully understood by the defendant." State v. Cartier, 210 N.J. Super. 379, 382 (App. Div. 1986). The cornerstone of the system is the "`mutuality of advantage'" it affords to the State and the defendant, State v. Taylor, supra, 80 N.J. at 361 quoting Brady v. United States, 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747, 758 (1970) and, thus, "it is important that the consequences of the plea are fully understood by both parties." State v. Cullars, supra, 224 N.J. Super. at 40. Toward that end, our court rules *566 "`are designed to assure that a guilty plea will not be accepted unless it is made voluntarily and intelligently with an understanding of the nature of the charges and the consequences of the plea.'" Ibid., quoting State v. Cartier, supra, 210 N.J. Super. at 382. See also State v. Brown, supra, 71 N.J. at 582; State v. Nichols, supra, 71 N.J. at 361.
Clearly, a myriad of ramifications, great and small, flow from the entry of a guilty plea and the resulting conviction. It is especially obvious that it is literally impossible for a trial judge to convey to an accused the full panoply of disabling consequences emanating from a conviction. Thus, in recent years, our courts have attempted to draw a distinction between ramifications thought to be relatively inconsequential and those believed to be of greater significance. It has been said in this context that "[t]he right of the defendant to be informed of the consequences of his plea ... extends only to those consequences that are `direct,' or `penal,' but not to those that are `collateral.'" State v. Howard, supra, 110 N.J. at 122, quoting State v. Heitzman, 209 N.J. Super. 617, 622 (App.Div. 1986), aff'd o.b. 107 N.J. 603 (1987). In other words, a defendant has the right not to be "misinformed ... as to a material element of a plea negotiation, which [he] has relied thereon in entering his plea." State v. Nichols, supra, 71 N.J. at 371.
However phrased, it is abundantly plain that the loss of parole opportunity constitutes a significant consequence of a plea because it directly impacts upon the actual period of incarceration the defendant must serve. The simple and overriding fact is that, while there are undoubtedly exceptions, most defendants are primarily concerned with the amount of time they must spend in prison in determining whether to plead guilty and under what conditions. To that extent, the defendant's parole eligibility status constitutes a significant penal consequence that should be fully explained and understood prior to entry of a guilty plea.
*567 In two recent decisions, our Supreme Court has emphasized the need to insure that "a pleading defendant is aware of any loss of parole opportunities that are part of the sentence." State v. Howard, supra, 110 N.J. at 123. In State v. Kovack, 91 N.J. 476 (1982), the defendant pled guilty to aggravated sexual assault. In his interrogation, defense counsel elicited the fact that defendant believed he would be eligible for parole after serving two and one-half years. Although neither the trial court nor counsel advised defendant of the possibility of parole ineligibility, a minimum four-year term was ultimately imposed pursuant to the discretionary authority conferred by N.J.S.A. 2C:43-6 b. In setting aside the agreement, the Supreme Court held that it is incumbent upon a trial judge to apprise a defendant of the possibility that he may impose a parole ineligibility term as part of a sentence. Id. at 484.
In State v. Howard, supra, the defendant entered a plea of guilty to sexual assault. In the course of the plea proceedings, the defendant was advised of the maximum term pertaining to the offense, but was not apprised of the consequences of a sentence to the Adult Diagnostic Treatment Center (ADTC) and the different and more exacting parole standard provided in such cases. The Supreme Court held that such information was critical to a fair understanding of the consequences of the plea. 110 N.J. at 125. The Court stated that, in the future, trial judges must inform sex offenders of the possibility of an ADTC sentence and its parole consequences. Ibid.
Against this backdrop, we are convinced that a defendant charged with having committed a Graves Act offense must be advised of the mandatory parole ineligibility term prescribed by N.J.S.A. 2C:43-6 c. Although R. 3:9-2 makes no specific provision for apprising defendant at the time of the plea of the mandatory nature of the parole ineligibility period provided by the Graves Act, we deem this course necessary to assure a fully informed waiver of the right to contest the charges. In that context, it is not enough that the defendant be informed of the *568 possibility of parole ineligibility. Rather, he must be apprised of the mandatory parole ineligibility term prescribed by the Graves Act. In our view, the responsibility for insuring that a defendant is so informed should not be cast exclusively on the shoulders of defense counsel. While defense counsel has an obvious duty to fully explain the mandate of N.J.S.A. 2C:43-6 c, we are convinced that the trial court should satisfy itself, through specific questions and answers, that the defendant thoroughly understands the parole implications arising out of a conviction for a Graves Act offense.
It does not follow, however, that the defendant, not so informed, should be entitled to vacate his plea. As we said in State v. Cullars, supra, "[a] guilty plea is not to be set aside whenever the trial court procedures are less than perfect." 224 N.J. Super. at 41. Our Supreme Court has rejected a per se rule permitting plea retraction upon the breach of a less than well-established safeguard. State v. Taylor, supra, 80 N.J. at 363. Whether a defendant should be permitted to vacate his plea "ought to be decided on a case-by-case basis, depending upon whether the [accused] can be said to have been prejudiced by the omission." Ibid. To vacate the plea, "defendant must show not only that he was misinformed of the terms of the agreement or that the sentence violated his reasonable expectations, but also that he is prejudiced by enforcement" of the plea bargain. State v. Howard, supra, 110 N.J. at 123. This involves a showing that (1) defendant was misinformed or otherwise misunderstood a material, penal consequence of the plea and (2) the consequence would have made a difference in his decision to plead. Ibid.
We are thus constrained to remand the matter to the Law Division for a full exploration of whether, despite the trial court's omission, defendant was aware of the mandatory parole ineligibility term required by the Graves Act. We note from *569 our review of the sentencing transcript that defense counsel was fully knowledgeable and conversant with the terms of N.J.S.A. 2C:43-6 c. We further observe, as we did in our recital of the facts, that defendant signed a statement acknowledging he had been advised by his attorney that a parole ineligibility term might be "required." There is, therefore, some reason to believe that defendant, despite his youth and presumed lack of sophistication, was thoroughly cognizant of the parole consequences of his plea. In making this determination, the trial court should not approach the defendant's attack upon the plea agreement with "a set attitude of skepticism." State v. Taylor, supra, 80 N.J. at 365. However, it should be sensitive to the fact that the events alleged in the indictment occurred some time ago, that defendant's dilatory conduct has made it far more likely that he can no longer be effectively prosecuted, and, thus, he has a keen interest in seeking to avoid the terms of the plea agreement. Other than these obvious considerations, we express no opinion on the merits of the factual issue to be resolved.

II.
We find no merit whatsoever in defendant's arguments that his plea of guilty to attempted murder was not supported by an adequate factual basis and that, in any event, the trial court erred by failing to merge the convictions for possession of a firearm for an unlawful purpose and armed robbery. R. 2:11-3(e)(2).
As to defendant's first contention, defendant's statement at the time of the plea adequately established the essential elements of the crime of attempted murder. State v. Sainz, 107 N.J. 283, 293 (1987); State v. Taylor, supra, 80 N.J. at 361-362. Defendant stated unequivocally that he fired three shots as Glover was attempting to escape. The clear implication of his statement is that he was firing at Glover and intended to shoot *570 him. What was conveyed was not that defendant fired the weapon aimlessly into the woods.
We also reject defendant's merger argument. A similar contention was considered and rejected by our Supreme Court in State v. Truglia, 97 N.J. 513 (1984). There, the Court stated:
A defendant who enters a plea generally to multiple offenses has no right to insist that the plea be interpreted in the light most favorable to him. Rather, the trial court is entitled to view such a plea most favorably to the State. The State's position gains even more weight on appeal from the belatedness of defendant's assertion of merger. [Id. at 521-522].
These principles apply with equal force here. We stress that the firearm was possessed and used for purposes other than commission of the robbery. The weapon was used in the course of kidnapping the victim and was possessed by defendant and/or his accomplice long after the robbery was completed. We thus find that defendant has failed to satisfy the burden imposed on him to demonstrate the offenses merged. Id. at 522.

III.
We need not decide directly whether the trial court erred by summarily dismissing defendant's petition for post-conviction relief. We have already concluded that a remand is necessary to determine whether defendant was properly advised by his attorney of the parole implications stemming from his plea of guilty to a Graves Act offense. The issue thus raised in defendant's petition for post-conviction relief, whether he was cajoled into entering a guilty plea without knowledge of its consequences, must necessarily be addressed by the trial court at the remand hearing. Although defendant's petition for post-conviction relief was couched in constitutional language, see Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), reh'g den. 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); State v. Fritz, 105 N.J. 42 *571 (1987), the factual predicate for his claimed Sixth Amendment deprivation also undergirds his assertion as to the involuntariness of the plea. As we have emphasized, this is to be the subject of inquiry at the remand hearing. See State v. Rhein, 117 N.J. Super. 112, 118 (App.Div. 1971); State v. Odom, 113 N.J. Super. 186, 189 (App.Div. 1971); State v. Rosen, 110 N.J. Super. 216, 219 (App.Div. 1969), aff'd 56 N.J. 89 (1970).
The only additional issue raised by defendant in his petition for post-conviction relief, other than the allegedly duplicative nature of the indictment, a contention which we find to be clearly without merit, concerns the legality of the sentences imposed. We have previously pointed out that the judge's pronouncements at the time of sentencing were inconsistent with the sentences reflected by the judgment of convictions. Cf. State v. Womack, 206 N.J. Super. 564, 570 (App.Div. 1985), certif. den. 103 N.J. 482 (1986); State v. Pohlabel, 40 N.J. Super. 416, 423 (App.Div. 1956). Beyond this, the sentence imposed on the attempted murder conviction was clearly illegal, because that offense constituted a second degree crime at the time it was committed. See N.J.S.A. 2C:5-4 a. So too, the sentences imposed on the convictions for armed robbery and possession of a firearm for an unlawful purpose, as reflected in the judgment, were illegal, because no parole ineligibility terms were set, as required by N.J.S.A. 2C:43-6 c.
In sum, substantial error permeated defendant's sentences. In the event the plea is permitted to stand, based upon specific findings of fact and conclusions of law, at the remand hearing, we direct that defendant be resentenced on all counts.

IV.
Accordingly, the matter is remanded to the Law Division for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Pursuant to N.J.S.A. 2A:4A-26, the Family Part waived jurisdiction and referred the matter to the adult court.