825 A.2d 1178

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. ROBERT A. WOOD, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 14, 2003—Decided June 27, 2003.

Before Judges KING, LISA and FUENTES.

*Richard Sparaco,* attorney for appellant.

*Thomas F. Kelaher,* Ocean County Prosecutor, attorney for respondent (*Patricia S. Toreki,* Assistant County Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

FUENTES, J.A.D.

The sole issue in this appeal is whether a stun gun is a "deadly weapon" within the meaning of the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, as it existed prior to the June 29, 2001 amendments.[1] Defendant Robert A. Wood pled guilty to one count of first degree robbery, *N.J.S.A.* 2C:15–1a, and one count of third degree escape, *N.J.S.A.* 2C:29–5b, pursuant to a negotiated plea agreement. The terms of the agreement left open the NERA issue for the court's determination.

At the plea hearing, defendant gave the following factual basis for the first degree robbery charge:

---

[1] The case originally came before us on July 23, 2002, as part of the excessive sentencing oral argument calendar. Judge Stern ordered the parties to fully brief this issue and directed that the case be re-listed and resolved by formal opinion.

Q. And at that time did you come into contact with an individual by the name of William Bay, B–A–Y?

A. Yes, sir.

Q. Did you commit a theft upon William Bay?

A. Yes, sir.

Q. And in the course of committing that theft did you use a stun gun, as it's commonly known?

A. Yes, sir.

Q. Do you understand that to use such a stun gun in the course of committing a theft constitutes the first degree crime of armed robbery?

A. Yes, sir.

Q. How do you plead to that charge?

A. Guilty.

## CROSS EXAMINATION BY COUNTY PROSECUTOR

Q. Mr. Wood, tell me about the stun gun. Is this one of those guns that you actually have to touch the skin and then pull the trigger to—for lack of a better word—zap or give a charge to the person that you were using it on?

A. I don't know what you mean.

Q. Well, there's a couple kinds of stun guns. There's the kind that shoot out electrodes and they stick in somebody and they've got wires attached to them, and there's the kind that you actually have to hold it up to them in order for the electrical shock to be given. Which kind was it?

A. It's powered by a six-volt battery.

Q. Did it have things and tentacles that shot out from it or was it hand-held only?

A. Hand held.

Q. Hand held only?

A. Yes, sir.

Q. Okay. And you actually have to touch the person and it leaves a little burn, a swelling mark; right?

A. Yes, sir.

Q. Okay. And you did this to Mr. Bay more than once; correct?

A. Excuse me?

Q. You actually used this stun gun on Mr. Bay a number of times; right?

A. Yes, sir.

At the time of the robbery, the victim was age 74.

At the sentencing hearing, the trial court held that a stun gun was a deadly weapon for NERA purposes and sentenced defendant to a term of twenty years, with an eighty-five percent period of parole ineligibility. The court based its decision on the inclu-

sion of stun gun within the definition of "weapon" in *N.J.S.A.* 2C:39–1r.

Under the relevant section of the pre-amendment NERA, a person was subject to the provisions of the statute if he was sentenced for committing a "violent crime." The term "violent crime" was defined as:

> [A]ny crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of *N.J.S.A.* 2C:11–1, or uses or threatens the immediate use of a deadly weapon. "Violent crime" also includes any aggravated sexual assault or sexual assault in which the actor uses, or threatens the immediate use of, physical force.
>
> For the purposes of this section, "deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury.
>
> [*N.J.S.A.* 2C:43–7.2d.]

Analytically, we will approach this matter the same way Judge Pressler did in *State v. Austin,* 335 *N.J.Super.* 486, 762 *A.*2d 1052 (App.Div.2000), *certif. denied,* 168 *N.J.* 294, 773 *A.*2d 1157 (2001). In reaching the conclusion that an inoperable BB gun was not a deadly weapon under NERA, Judge Pressler noted that unlike the Graves Act[2] which expressly incorporates the definition of "firearm" in *N.J.S.A.* 2C:39–1f, section d in NERA does not. She thus reasoned that "the legislative intention to impose the severe penalty of parole ineligibility until eighty-five percent of the base term has been served was clearly intended to be limited to those truly violent crimes encompassed by its careful and circumscribed definition." *State v. Austin,* 335 *N.J.Super.* at 491, 762 *A.*2d 1052.

In this case, the NERA definition of "deadly weapon" requires a judicial finding that the stun gun was, in the manner it was used or was intended to be used, "known to be capable of producing death or serious bodily injury." The record before us does not support such a finding. It is undisputed that despite being

---

[2] This refers to *N.J.S.A.* 2C:43–6c which mandates a parole ineligibility term of between one-third and one-half of the base term if a firearm is used in the commission of the crime.

submitted to repeated electrical discharges, the victim did not sustain "serious bodily injury" as defined in *N.J.S.A.* 2C:11–1b. The only reference to the stun gun's capacity to inflict pain and injury comes from a comment made by defendant himself that the weapon was powered by a "six-volt battery." Without more, this record is legally insufficient to support a finding that the stun gun used here fits the NERA definition of deadly weapon.

We remand this matter to the sentencing court to permit the State to present evidence that this stun gun, in the manner it was used or intended to be used, was known to be capable of producing death or serious bodily injury. Such evidence may consist of expert testimony and technical data provided by the stun gun's manufacturer, including the manufacturer's use and safety instructions.

Reversed and remanded. We do not retain jurisdiction.