762 A.2d 1052 (2000)
335 N.J. Super. 486
STATE of New Jersey, Plaintiff-Respondent,
v.
Gilbert AUSTIN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 28, 2000.
Decided December 13, 2000.
*1053 Joel M. Harris, First Assistant Public Defender, attorney for appellant (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, attorney for respondent (Teresa A. Blair, Deputy Attorney General, of counsel and on the brief).
Before Judges PRESSLER, KESTIN and ALLEY.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal once again raises an issue respecting the scope of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. More specifically, the question now before us is whether an inoperable BB gun used in the commission of a robbery is a deadly weapon as defined by N.J.S.A. 2C:43-7.2d. Although we acknowledge that an inoperable BB gun constitutes a deadly weapon for purposes of elevating a robbery to first-degree status pursuant to N.J.S.A. 2C:15-1b and that it constitutes a firearm for purposes of so-called Graves Act mandatory sentencing under N.J.S.A. 2C:43-6c, we are nevertheless persuaded that it does not constitute a deadly weapon for NERA purposes.
Pursuant to a plea agreement, defendant pleaded guilty to an accusation charging him with first-degree robbery under N.J.S.A. 2C:15-1 in that he "knowingly and purposely, in the course of committing a theft threaten[ed] the immediate use of a deadly weapon." At the plea proceeding, defendant admitted that he had entered a store for the purpose of theft and displayed a BB gun to the person behind the counter from whom he took cash. The prosecutor stipulated that the BB gun was inoperable at the time of the theft.[1] The State's undertaking was to recommend a sentence of ten years subject to NERA's eighty-five percent parole ineligibility period, namely eight and a half years. We further note that in explaining the plea agreement to the court and its NERA component, the prosecutor was under the stated misimpression that because the weapon was inoperable, the crime did not qualify for Graves Act sentencing. In any event, the negotiated NERA sentence was thereafter imposed, and defendant appeals, arguing that the inoperability of the weapon took this crime out of NERA's ambit.
Our agreement with defendant's argument is based on the text of N.J.S.A. 2C:43-7.2d, which provides in full as follows:
For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of N.J.S. 2C:11-1, or uses or threatens the immediate use of a deadly weapon. "Violent crime" also includes any aggravated *1054 sexual assault or sexual assault in which the actor uses, or threatens the immediate use of, physical force.
For the purposes of this section, "deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury.
We focus on the second unnumbered paragraph, which defines a "deadly weapon" that will render a first- or second-degree offense a violent crime subject to NERA. For NERA purposes, "deadly weapon" is defined as "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury." The interpretive question is whether the phrase "which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury" qualifies only "other weapon, device, instrument, material or substance" (hereafter "other weapon") or whether that modifying phrase also qualifies "any firearm." We are persuaded that the text of this section, considering both its grammatical construction and punctuation, does not clearly point to either interpretation. Since the answer does not, therefore, lie in the plain meaning of the statute, we must resort to other constructional aids including legislative intent, applicable canons of construction, and both the text and judicial interpretation of other cognate and relevant legislation. Relying on these constructional aids, we conclude that both "any firearm" and "other weapon" are subject to the qualification. Hence, since an inoperable firearm used to threaten a victim is not itself capable of producing death or serious bodily injury,[2] it may not be regarded as a deadly weapon for NERA sentencing purposes.
We have been guided in reaching this conclusion first by the canon of statutory interpretation that mandates strict construction of a criminal statute. See generally State v. Galloway, 133 N.J. 631, 658-659, 628 A.2d 735 (1993); State v. Valentin, 105 N.J. 14, 17, 519 A.2d 322 (1987); State v. Carbone, 38 N.J. 19, 23-24, 183 A.2d 1 (1962). That canon has been, moreover, applied to NERA. State v. Thomas, 322 N.J.Super. 512, 518, 731 A.2d 532 (App.Div.), certif. granted, 162 N.J. 489, 744 A.2d 1211 (1999). It is in the light of that overarching principle that we address the relationships among the complex of relevant statutes and parse their legislatively intended meanings, considering, in this context, the import of N.J.S.A. 2C:11-1c, which defines deadly weapon; N.J.S.A. 2C:15-1b, which elevates robbery to a first-degree crime if a deadly weapon is used or its use is immediately threatened; N.J.S.A. 2C:43-6c, the so-called Graves Act, which mandates a parole ineligibility term of between one-third and one-half of the base term if a firearm, as defined by N.J.S.A. 2C:39-1f, is used or possessed during the commission of stated crimes; and, finally, the firearm definition of N.J.S.A. 2C:39-1f.
Our initial step in constructing this analytical framework is N.J.S.A. 2C:39-1f, which defines firearm as
any handgun, rifle, shotgun, machine gun, automatic or semi-automatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectable ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances. It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon *1055 of a similar nature in which the propelling force is a spring, elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eighths of an inch in diameter, with sufficient force to injure a person.
This definition has been construed as excluding a toy or fake firearm but as including a device designed as a firearm although inoperable at the time of its use in committing a crime. State v. Gantt, 101 N.J. 573, 584-585, 503 A.2d 849 (1986). It is thus clear that not only a BB gun but also an inoperable BB gun is a firearm as defined by N.J.S.A. 2C:39-1f. But that conclusion does not impel the further conclusion that it is also a firearm for NERA purposes.
In considering that proposition, we turn next to the Graves Act. N.J.S.A. 2C:43-6c prescribes two bases for imposition of its mandatory parole ineligibility term. The first is a conviction under N.J.S.A. 2C:39-4a of possession of a firearm with intent to use it against the person of another. It is plain that "firearm," as used in that prescription, incorporates the definition of N.J.S.A. 2C:39-1f since N.J.S.A. 2C:39-1 begins with the explanation that all its definitions govern Chapter 39. The second basis for imposition of a Graves Act sentence is defendant's conviction of one of the group of specified crimes if, during its attempt, commission or flight therefrom, he was "in possession of a firearm as defined by N.J.S.A. 2C:39-1f...." This explicit reference to N.J.S.A. 2C:39-1f leaves, of course, no doubt of the congruity between the Graves Act and the Chapter 39 definition in respect of firearms. And it is, of course, that congruity which is at the heart of the Supreme Court's holding in Gantt, supra, 101 N.J. 573, 503 A.2d 849, that a possession of an inoperable firearm subjects the defendant to a Graves Act sentence.
NERA, however, is quite different. Section d does not incorporate, either expressly or by implication, the firearm definition of N.J.S.A. 2C:39-1f. Nor does it make any reference to N.J.S.A. 2C:39-1v, which defines an imitation firearm. We regard this omission as critical. As we noted in State v. Thomas, supra, 322 N.J.Super. at 518, 731 A.2d 532, in the context of a NERA constructional problem, we must presume that the Legislature is familiar with its own enactments. When it intended to incorporate the reference to the Chapter 39 definition, as in the case of the Graves Act, it certainly knew how to do so. We must, therefore, assume that NERA's omission of a reference to the Chapter 39 definition was purposeful and hence that a qualification of that definition was within the legislative contemplation in enacting NERA. We view the legislative intent in that regard as based on its perception that while possession of an inoperable weapon during the commission of a serious crime should qualify a defendant for a Graves Act sentence, it need not, in implementation of its NERA purposes, impose that same onus on the use or threatened use of an inoperable weapon in commission of a first- or second-degree crime. The legislative intention to impose the severe penalty of parole ineligibility until eighty-five percent of the base term has been served was clearly intended to be limited to those truly violent crimes encompassed by its careful and circumscribed definition. It is, therefore, entirely consistent with the legislative scheme for the Legislature to have included inoperable weapons within the Graves Act penalty but not within the NERA penalty.
We find further support for this conclusion in the disparity in the legislative approach to the concept of deadly weapons in other contexts as compared with its approach in NERA. N.J.S.A. 2C:11-1c defines deadly weapon as
any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing *1056 death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.
As we pointed out in State v. Mosley, 335 N.J.Super. 144, 151, 761 A.2d 130 (App. Div.2000), this definition includes not only real weapons but also any device so fashioned as to reasonably lead the victim to believe it is a real weapon, i.e., a perceived weapon. And the perceived-weapon definition is not included in the NERA definition of deadly weaponagain, an omission which we must presume, and indeed has been held, to have been purposeful. See State v. Pierre, 329 N.J.Super. 588, 595-596, 748 A.2d 654 (Law Div.1999), aff'd, 330 N.J.Super. 7, 748 A.2d 1129 (App.Div. 2000). We further point out that N.J.S.A. 2C:15-1b elevates a robbery to a first-degree crime if the defendant is armed with, uses, or threatens the use of a deadly weapon. "Deadly weapon" for purposes of first-degree robbery includes a perceived weapon as defined by N.J.S.A. 2C:11-1c as well as a real weapon. See State v. La France, 117 N.J. 583, 595, 569 A.2d 1308 (1990); State v. Hutson, 107 N.J. 222, 227-228, 526 A.2d 687 (1987). Thus a toy or fake gun is sufficient to elevate a robbery to a first-degree crime but is not sufficient to justify imposition of a Graves Act sentence, which is reserved for the use of firearms, not all deadly weapons.
There is, moreover, further significance in the omission of the perceived weapon from the NERA deadly-weapon definition. The first portion of the deadly-weapon definition of N.J.S.A. 2C:11-1c, that is, the real-weapon definition, is identical to the deadly-weapon definition of NERA and, therefore, includes the same qualification of "known to be capable of producing death or serious bodily injury." Insofar as we have been able to determine, the question before us of whether that qualification in the non-NERA context modifies both firearm and "other weapon" or "other weapon" only has not arisen in a reported case in this jurisdiction, leaving us, therefore, without precedent on the scope of the qualification. We are satisfied, however, that the reason the question of scope of the qualification has not heretofore arisen is attributable to the perceived-weapon component of the N.J.S.A. 2C:11-1c definition of deadly weapon. That is to say, it is hardly necessary to consider whether a firearm for purposes of that definition must be one that is known to be capable of producing death or serious bodily injury e.g., an operable firearmsince whether operable or not, an apparent firearm meets the perceived-weapon component of the definition. It is, therefore, that omission of that component from the NERA deadly-weapon definition that raises the issue of inoperable weapons in the first place.
We fully appreciate that our construction of NERA which applies the qualification of "known to be capable of producing death or serious bodily injury" to both firearms and "other weapons" and, therefore, excludes inoperable firearms from the NERA definition, results in a more stringent definition of firearm and of deadly weapon than the Criminal Code had theretofore prescribed. But then again, NERA imposes a more stringent penalty for first- and second-degree crimes than the Criminal Code had theretofore prescribed. It is our obligation to strictly construe NERA that, in the end, has led us to the conclusion, for the reasons we have set forth, that an inoperable firearm is not a deadly weapon for NERA purposes. We do not, however, question the proposition that an operable firearm encompassed by the definition of N.J.S.A. 2C:39-1f does meet NERA requirements. See, e.g., State v. Cheung, 328 N.J.Super. 368, 746 A.2d 38 (App.Div.2000) (NERA sentencing may be based on use of a BB gun); State v. Meyer, 327 N.J.Super. 50, 742 A.2d 614 (App.Div.2000) (NERA sentencing may be based on use of a pellet gun).
*1057 There are several additional matters we must address. First, we are aware that a trial court has reached a contrary conclusion, State v. Perez, 331 N.J.Super. 497, 752 A.2d 378 (Law Div.2000). To the extent that decision is contrary to ours, we overrule it. We further note that we have received supplementary letters from the parties addressing the applicability of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). For the reasons stated in State v. Mosley, supra, we reject the argument that NERA is structurally defective in the constitutional sense because of the post-conviction judicial fact-finding hearing which it prescribes.
Finally, defendant's statement at the plea proceeding provided a factual basis for conviction of first-degree robbery. The State stipulated to the inoperability of the BB gun, and hence there was no basis for imposition of a NERA sentence. There was, however, despite the prosecutor's misunderstanding, not only a basis for a Graves Act sentence but the mandatory requirement that a Graves Act sentence be imposed. A sentence imposed on conviction of a first-degree robbery by use of a firearm as defined by N.J.S.A. 2C:39-1f, including an inoperable firearm, that does not carry a Graves Act mandatory parole ineligibility period is an illegal sentence. See State v. Myers, 239 N.J.Super. 158, 171, 570 A.2d 1260 (App.Div.), certif. denied, 127 N.J. 323, 604 A.2d 598 (1990); State v. Bailey, 226 N.J.Super. 559, 571, 545 A.2d 206 (App.Div.1988). An illegal sentence that has not been completely served may be corrected at any time without impinging upon double-jeopardy principles. See, e.g., State v. Swint, 328 N.J.Super. 236, 263, 745 A.2d 570 (App. Div.); certif. denied, 165 N.J. 492, 758 A.2d 651 (2000); State v. Copeman, 197 N.J.Super. 261, 265, 484 A.2d 1250 (App. Div.1984). We therefore deem the trial judge obliged, on remand for resentencing, to impose a Graves Act sentence.
The judgment of conviction is modified to vacate the NERA parole ineligibility term, and we remand for resentencing in accordance with this opinion. In all other respects the judgment of conviction is affirmed.
NOTES
[1] Prior to sentencing, the weapon was tested and its inoperability was confirmed.
[2] We are not here addressing the use of a firearm as a blunt instrument but only, as here, its use for the purpose of inducing the victim to believe it can shoot projectiles.