777 A.2d 1039 (2001)
343 N.J. Super. 149
STATE of New Jersey, Plaintiff,
v.
Corey SPAHLE, Defendant.
Superior Court of New Jersey, Law Division, Criminal Part, Essex County.
Decided May 15, 2001.
Elaine Wladyga, Assistant Deputy Public Defender, attorney for defendant.
Robert Grady, Assistant Essex County Prosecutor, for the State of New Jersey (Donald C. Campolo, Assistant Attorney General/Acting Essex County Prosecutor).
KLEIN, J.S.C.
Pursuant to a plea agreement, defendant pleaded guilty under an indictment charging him with second degree conspiracy to commit robbery, second degree possession of a weapon for an unlawful purpose, and first degree robbery under N.J.S.A. 2C:15-1 in that he "was armed with or did threaten the immediate use of a deadly weapon, a handgun" in the course of committing said robbery[1]. At the time of entry of the plea, defendant admitted that he and two others approached a prospective victim with the intent to rob her, and that he displayed a silver .380 caliber handgun to the victim while saying "I'll put two in you." He admitted that he wanted the victim to feel threatened and to think the gun was loaded; however, it was not. The gun had no ammunition in it, and defendant had none on his person. The operability of the weapon was undisputed, having been confirmed through testing.
The plea bargain contemplated that the robbery would be sentenced as a second *1040 degree offense, with a recommendation by the State for a term of seven years subject to the eighty-five percent parole ineligibility period under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant, while acknowledging that he was subject to Graves Act mandatory parole ineligibility sentencing under N.J.S.A. 2C:43-6c, contested the applicability of NERA.
Because the defendant failed to appear for sentencing, a bench warrant was issued. In the time that elapsed before defendant's pick-up under the bench warrant, the Appellate Division issued its opinion in State v. Austin, 335 N.J.Super. 486, 762 A.2d 1052 (App.Div.2000). That case held that an inoperable firearm (a BB gun) was not a deadly weapon for NERA sentencing purposes. Applying the reasoning and analysis of Austin, the appropriate result where, as here, the weapon was unloaded (albeit operable) should not be any different than in a situation where the weapon was inoperable, i.e. NERA does not apply.
The focus of NERA is on the actions and intent of the defendant in committing a "violent crime", which for purposes of this case means a crime in which he "uses or threatens the immediate use of a deadly weapon." As defined in N.J.S.A. 2C:43-7.2d, a "deadly weapon" is one "which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury." The statute has been interpreted so as to make any firearm subject to this qualification along with all other weapons. State v. Austin, 335 N.J.Super. at 489, 762 A.2d 1052.
In defining a firearm for purposes of NERA, the Legislature eschewed the standard definition set forth in N.J.S.A. 2C:39-1f, which it had expressly incorporated into the Graves Act. Similarly, the NERA definition of "deadly weapon" does not precisely parallel the definition of that term in N.J.S.A. 2C:11-1c, because it omits any reference to a device fashioned so as to "lead the victim reasonably to believe it to be capable of producing death or serious bodily injury." The latter, referred to by the court in State v. Austin as a perceived weapon, establishes a first degree robbery under N.J.S.A. 2C:15-1b to the same extent as a real weapon. These omissions from NERA confirm its status as a stand-alone statute applicable to those "truly violent crimes encompassed by its careful and circumscribed definition." Austin, 335 N.J.Super. at 491, 762 A.2d 1052. It is undisputably subject to the canon of strict construction. State v. Thomas, 322 N.J.Super. 512, 518, 731 A.2d 532 (App.Div.1999), aff'd 166 N.J. 560, 767 A.2d 459 (2001).
With that in mind, an unloaded firearm used to threaten a victim is not itself capable of producing death or serious bodily injury and should not be considered a deadly weapon under NERA.[2] Moreover, under the facts of this case, it also was not "intended to be used" to produce death or serious bodily injury. The fact that the defendant set out on his stated mission to commit robbery with a handgun that had no bullets, and without any ammunition at the ready, bespeaks his intention not to fire it. This no more commands NERA treatment than the situation where the actor is armed with a fully loaded weapon but is thwarted in its use by a defect or malfunction that renders it inoperable. In fact, if one focuses on the indicia of the actor's intent in both situations, the present *1041 case presents a far less compelling argument for NERA applicability.
In deciding this issue in this manner, the court is mindful of the statement in Austin, 335 N.J.Super. at 493, 762 A.2d 1052, that "an operable firearm encompassed by the definition of N.J.S.A. 2C:39-1f does meet NERA requirements." However, in this court's view, blind adherence to this bald principle without consideration of the unique facts presented here is not in keeping with the canon of strict construction that Austin espouses. Perhaps it is an overly simplistic observation, but a handgun without bullets cannot shoot bullets. So long as it remains in an unloaded condition, it is the same as an inoperable weapon because it is not itself capable of producing death or serious bodily injury.
For the reasons stated above, the defendant's sentence includes a parole ineligibility period under the Graves Act, but not under NERA.
NOTES
[1] The plea agreement also encompassed a separate indictment charging third degree receiving stolen property, which is not involved in the present issue.
[2] As in Austin, the court is not concerned with the potential use of a firearm to pistolwhip or bludgeon a victim but only its use in the context of this case, which was to make the victim think it could fire bullets.