784 A.2d 722 (2001)
345 N.J. Super. 185
STATE of New Jersey, Plaintiff-Respondent,
v.
Cirilien JULES, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 16, 2001.
Decided November 7, 2001.
Peter A. Garcia, Acting Public Defender, attorney for appellant (Michael O. Dermody, Designated Counsel, of counsel and on the brief).
Fred J. Theemling, Jr., Hudson County Prosecutor, attorney for respondent (Leonardo V. Rinaldi, Assistant Prosecutor, on the brief).
Appellant filed a pro se supplemental brief.
*723 Before Judges WEFING, CIANCIA and PARRILLO.
The opinion of the court was delivered by CIANCIA, J.A.D.
The significant issue addressed by this opinion is whether a sentence may be imposed pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, upon a defendant who attempts a robbery while armed with a handgun that is operable but unloaded. We find that NERA is applicable in these circumstances and overrule State v. Spahle, 343 N.J.Super. 149, 777 A.2d 1039 (Law Div.2001), which holds to the contrary.
Following a jury trial, defendant was found guilty of robbery while armed with a deadly weapon, to wit a handgun, N.J.S.A. 2C:15-1b; possession of a handgun with the purpose to use it unlawfully against another person, N.J.S.A. 2C:39-4a; and possession of a handgun without having obtained a permit, N.J.S.A. 2C:39-5b.
On the first-degree armed robbery conviction, a ten-year sentence was imposed with a NERA parole disqualification of eight and one-half years. On the second-degree conviction for possessing a weapon for an unlawful purpose, a seven-year term was imposed with a three-year parole disqualifier. The third-degree conviction for possessing a handgun without a permit resulted in a four-year sentence. All sentences were to run concurrently with each other.
Defendant's initial contention is that he was denied effective assistance of counsel, "due to counsel's failure to allow the defendant to testify on his own behalf." In this regard, the record reflects only a short colloquy among defendant, defense counsel and the trial judge concerning defendant's decision not to testify. We are satisfied that the record available to us is insufficient to permit a meaningful evaluation of defendant's claim. Many factors come into play when a defense attorney recommends that his client not take the stand. Here, we note that defendant's conduct at the time of the crime was somewhat ambiguous. He approached the victim with the gun drawn, but apparently never said anything to the victim prior to his arrest. The victim turned out to be a police officer wearing a raincoat. Defendant, who is not fluent in English, made a post-arrest statement to the effect that he did not intend to rob the victim, but was going "to do" him until a man defendant was with indicated the victim was a police officer. It is not clear whether defendant had any prior convictions at the time of trial that could have been used to impeach his credibility. We point out these few facts only to emphasize that defense counsel's rationale for any recommendations he made to defendant and defendant's level of comprehension, should both be explored on the record. Accordingly, the need for additional factfinding precludes appellate review and defendant, if he so chooses, may raise this issue on post-conviction relief. State v. Preciose, 129 N.J. 451, 609 A.2d 1280 (1992).
Defendant's NERA contention is that a NERA sentence should not have been imposed because no post-trial hearing was provided on the NERA predicate facts and because an unloaded gun does not constitute a "deadly weapon" within the meaning of N.J.S.A. 2C:43-7.2d.
The first contention is easily resolved. The facts at trial and the specific responses of the jury to interrogatories, established beyond a reasonable doubt that defendant threatened the immediate use of a deadly weapon in an effort to effectuate a robbery. The uncontradicted evidence was that defendant approached *724 the victim with the gun drawn. The jury specifically found defendant was "armed with or threatened the immediate use of a deadly weapon, to wit, a handgun in the course of committing the theft." The essential factual predicate was determined through the trial process. An additional hearing was unnecessary. State v. Johnson, 166 N.J. 523, 546, 766 A.2d 1126 (2001).
This assumes, of course, that an unloaded but operable gun constitutes a deadly weapon within the meaning of NERA. We believe the Legislature so intended. NERA is a penal statute subject to strict construction, but that does not mean that manifestations of the Legislature's intention should be disregarded. State v. Ferencsik, 326 N.J.Super. 228, 231, 741 A.2d 101 (App.Div.1999). The history, structure, and purpose of NERA as well as its relationship, vel non, to other sections of the Code, have been discussed in numerous reported decisions and need not be retraced in their entirety. See e.g., State v. Thomas, 166 N.J. 560, 767 A.2d 459 (2001); Johnson, supra, 166 N.J. 523, 766 A.2d 1126; State v. Mosley, 335 N.J.Super. 144, 761 A.2d 130 (App.Div. 2000), certif. denied, 167 N.J. 633, 772 A.2d 934 (2001); State v. Cheung, 328 N.J.Super. 368, 746 A.2d 38 (App.Div.2000); State v. Meyer, 327 N.J.Super. 50, 742 A.2d 614 (App.Div.), certif. denied, 164 N.J. 191, 752 A.2d 1292 (2000).
The NERA statute provides in relevant part that a sentence imposed for a violent crime of the first or second degree shall include a minimum parole ineligibility term of eighty-five percent of the sentence imposed. Violent crime is defined to include any crime in which the actor uses or threatens the immediate use of a deadly weapon. For purposes of NERA, "deadly weapon" is defined to include any firearm "which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury." State v. Austin, 335 N.J.Super. 486, 489, 762 A.2d 1052 (App.Div.2000), certif. denied, 168 N.J. 294, 773 A.2d 1157 (2001). Based upon that definition of deadly weapon, we held in Austin that an inoperable firearm used to threaten a victim, there a BB gun, "is not itself capable of producing death or serious bodily injury [and] it may not be regarded as a deadly weapon for NERA sentencing purposes." Ibid.
We found it significant that NERA, unlike the Graves Act, N.J.S.A. 2C:43-6c, does not incorporate the definition of "firearm" as found in N.J.S.A. 2C:39-1f, a definitional statute otherwise applicable only to chapters 39 and 58 of the Code. While the Graves Act's specific inclusion of the chapter 39 definition supports a finding that possession of an inoperable firearm violates that act, State v. Gantt, 101 N.J. 573, 584-585, 503 A.2d 849 (1986), the absence of such inclusion in the NERA statute negates any similar rationale for such a finding. Moreover, the NERA definition of deadly weapon tracks the definition of deadly weapon found in N.J.S.A. 2C:11-1c, but leaves off the phrase, "or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury,"i.e., the perceived-weapon definition. Accordingly, in Austin we held that to come within the NERA definition of deadly weapon, the firearm must be operable. Austin, supra, 335 N.J.Super. at 493, 762 A.2d 1052. We did not question, however, "the proposition that an operable firearm encompassed by the definition of N.J.S.A. 2C:39-1f does meet NERA requirements [citations omitted]." Ibid.
Viewing the present issue from that perspective, the question becomes whether the legislative exclusion from NERA of *725 inoperable firearms extends to unloaded guns that are otherwise operable. Inevitably, this is a matter of line drawing and the legislative history of NERA sheds little light on the specific question. We assume as a matter of statutory construction that the Legislature was aware of relevant, related statutes and case law in enacting NERA. State v. McCall, 14 N.J. 538, 547, 103 A.2d 376 (1954).
The operability and inoperability of firearms are concepts that do not lend themselves to explicit definition. A firearm with the safety on is inoperable, in a sense, as is a firearm that is loaded but without a cartridge in the chamber. No one would seriously contend that such forms of inoperability preclude NERA applicability, because the deficiency is easily remedied. Thus, in State v. Morgan, 121 N.J.Super. 217, 296 A.2d 539 (App.Div.1972), we found that a revolver with the firing pin filed down was not inoperable because the weapon could easily be made to fire by inserting a thin piece of metal or even a piece of paper between the pin and the cartridge. We there stated:
Courts of other jurisdictions interpreting similar firearm statutes have generally concluded that a firearm is no less a firearm if it is rendered temporarily inoperable because of a missing and easily replaceable part or by need of some minor repair or adjustment....
....
While it may be conceded that a weapon designed for firing projectiles may be so defective or damaged that it has lost its initial character as a firearm, ... this character is not lost when a relatively slight repair, replacement, or adjustment will make it an effective weapon.... In the instant case the absence of the easily replaceable firing pin did not destroy the character of the implement in question as a machine gun. [Quoting Commonwealth v. Bartholomew, 326 Mass. 218, 93 N.E.2d 551, 552 (1950) ].
Here it is plain that the operability of the revolver was a simple matter within the control of defendant. As in Bartholomew... there was expert testimony to establish that the weapon was capable of being fired with but minor adjustment. By this proof the State fairly countered defendant's claim that the revolver was inoperable.
[Id. at 220, 296 A.2d 539.]
The analogy to an unloaded weapon is apparent. Rendering an unloaded gun fully operational is all too easily achieved. So too, a loaded gun brandished but unfired in the commission of a crime is quickly unloaded where apprehension of the perpetrator and retrieval of the weapon are not instantaneous. We do not believe the Legislature intended NERA application to turn on details such as whether an ammunition clip is in the perpetrator's pocket or in the gun. Such a grudging construction of the statute would not comport with the legislative policy to punish, and we assume to deter, the use and threatened immediate use of deadly weapons in the commission of crimes. It would be somewhat incongruous to sentence an unarmed accomplice under NERA, as recently approved in State v. Rumblin, 166 N.J. 550, 766 A.2d 1141 (2001), but hold exempt a perpetrator with an unloaded gun that is otherwise operable.
In New Jersey, the loaded or unloaded status of a firearm has not been a factor in offenses involving weapons. In State v. Bill, 194 N.J.Super. 192, 198, 476 A.2d 813 (App.Div.1984), we found that in the context of a charge of assault by pointing a firearm, N.J.S.A. 2C:12-1b(4), "the Legislature intended that both loaded and unloaded firearms be considered when ascertaining guilt...."
*726 In State v. Butler, 89 N.J. 220, 445 A.2d 399 (1982), defendant pled guilty to first-degree robbery. He had simulated possession of a handgun in the course of robbing the victim. At that time, the definition of deadly weapon in N.J.S.A. 2C:11-1(c) was identical to the current NERA definition.[1] Writing for the Court, Justice Handler noted that our robbery statute was based on the New York Penal Code. Id. at 228, 445 A.2d 399. The New York law specifically permitted, as an affirmative defense to first-degree robbery, a showing that the weapon used to commit the crime was unloaded. Justice Handler noted that the New Jersey Code contains no such explicit affirmative defense. The Court did, however, conclude that the language in N.J.S.A. 2C:11-1(c) set forth an objective definition of deadly weapon:
This is an objective definition that does not include toy guns or simulation. Since first degree robbery requires a threat with a deadly weapon, there can be no doubt that the weapon itself must exist and be of a type that would ordinarily be capable of causing a grievous or fatal injury. [Butler, supra, 89 N.J. at 229, 445 A.2d 399 (footnote omitted).]
It is significant that in discussing and defining deadly weapon, the Butler Court never referenced a requirement that the gun be loaded, despite the explicit comment that New York law allows an affirmative defense to armed robbery when an unloaded gun is used.
Perhaps the pivotal conclusion from this is that when the Legislature speaks of a weapon "known to be capable of producing death or serious bodily injury," it speaks generically to operable weapons capable of injury, not to when it is loaded, or when the safety is taken off, or when a round is chambered, or the gun is cocked and the trigger is pulled. All of those events move an operable weapon to actual operation. We believe a firearm to be no less "ordinarily capable" of injury by virtue of those intervening steps not occurring, including loading. Admittedly, an unloaded weapon may be less capable of injury than a loaded weapon with the safety on, but we nevertheless believe an unloaded but operable weapon is within the NERA definition of deadly weapon. There is no present case law directly on point for this proposition, but we note that in State v. Cheung, supra, and State v. Meyer, supra, we held that a BB gun and a pellet gun, respectively, qualified as deadly weapons for NERA purposes, without mentioning the loaded status of the guns in defining deadly weapon. Similarly, in State v. Shoats, 339 N.J.Super. 359, 772 A.2d 1 (App.Div.2001), we again accepted the proposition that a BB gun is a deadly weapon within the meaning of the Act, "[s]ince there is no issue as to the operability of the gun...." Id. at 364, 772 A.2d 1. We nevertheless held that a NERA sentence was inapplicable because defendant did not use or threaten the immediate use of the BB gun. Once again, there was no mention of whether the gun was loaded in circumstances where such a fact, if important to the definition of deadly weapon, probably would have been commented upon.
The question presented does not admit of easy resolution. As the Law Division opinion in Spahle, supra, sets out, an unloaded weapon can arguably be akin to an inoperable weapon. The question is always one of legislative intent. As previously noted, New York law and the New York courts have long been explicit in the *727 availability of a defense based upon the unloaded nature of the weapon. People v. Holmes, 105 A.D.2d 803, 481 N.Y.S.2d 741 (2d Dept.1984); People v. Stephens, 97 A.D.2d 523, 468 N.Y.S.2d 31 (2d Dept. 1983); People v. Seabrooks, 120 A.D.2d 691, 502 N.Y.S.2d 4 (2d Dept.1986). We cannot conclude that our Legislature intended such a significant qualification by implication, particularly in the absence of any New Jersey case law giving voice to the loaded status of the weapon as a necessary definitional element in our Criminal Code. Our decision, we believe, comports with the majority of decisions around the country, although the circumstances in which courts have considered the loaded/unloaded status of a gun are many and varied. Jeffrey F. Ghent, Annotation, Fact that Gun was Unloaded as Affecting Criminal Responsibility, 68 A.L.R.4th 507 (1989). Unfortunately, that annotation contains no exact analog to NERA.
Defendant's additional arguments in support of the contention that his sentence was excessive, are also unavailing. He received the minimum sentence allowed by law, short of an actual downgrade, for the first-degree robbery offense and presumptive concurrent terms for the two additional convictions. The periods of parole ineligibility were mandated by law. The trial judge correctly applied the appropriate sentencing principles and there is no warrant for our interference. State v. Ghertler, 114 N.J. 383, 555 A.2d 553 (1989); State v. Roth, 95 N.J. 334, 471 A.2d 370 (1984).
Defendant's judgment of conviction is accordingly affirmed without prejudice to defendant's opportunity to argue on post-conviction relief that he was denied the effective assistance of trial counsel.
NOTES
[1] N.J.S.A. 2C:11-1(c) was amended effective January 4, 1982, to include the perceived-weapon language, "or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury."