**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1127-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

YOAFRY MINALLA, a/k/a
YOALFRY ALEXANDER
MINAYA,

     Defendant-Appellant.

_____

> Argued October 27, 2020 – Decided November 17, 2020
>
> Before Judges Haas, Mawla, and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 16-12-0993.
>
> Matthew T. Mierswa, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Meghan M. Dougherty, Designated Counsel, on the brief).
>
> Marc A. Festa, Senior Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Marc A. Festa, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant was convicted of third-degree possession of a controlled dangerous substance[1] (CDS), namely fentanyl, N.J.S.A. 2C:35-10(a)(1); second-degree unlawful possession of a weapon without a permit, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2). After merger, defendant was sentenced to a seven-year prison term with a forty-two-month period of parole ineligibility for the weapons convictions and concurrent five- and one-year terms, respectively, for the drug and resisting arrest convictions.

On appeal, defendant raises the following contentions:

> POINT I
>
> THE TRIAL COURT ISSUED INADEQUATE JURY INSTRUCTIONS ON POSSESSION OF A FIREARM FOR AN UNLAWFUL PURPOSE AND FAILED TO PROPERLY ADDRESS THE JURY'S QUESTION REGARDING EVIDENCE OF AN UNLAWFUL PURPOSE.

---

[1] Defendant was initially indicted for possession of heroin (count one) and crack cocaine (count four). On the verdict sheet, however, the CDS identified in count one is fentanyl, an analog for heroin. Likewise, in the judgment of conviction, count one is listed as possession of "CDS/ANALOG."

A.  The Jury Instructions Were Insufficient Because They Did Not Describe Defendant's Alleged Unlawful Purpose.

B.  The Trial Court Erred in Failing to Appropriately Address the Jury's Question Pertaining to Evidence of an Unlawful Purpose.

POINT II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING THE MOTION FOR A JUDGMENT OF ACQUITTAL ON POSSESSION OF A FIREARM FOR AN UNLAWFUL PURPOSE.

POINT III

THE STATE COMMITTED PROSECUTORIAL MISCONDUCT WHEN IT ASKED DEFENDANT TO CHARACTERIZE TESTIMONY AS LYING AND BERATED THE DEFENSE STRATEGY, DEPRIVING THE DEFENDANT OF DUE PROCESS AND A FAIR TRIAL.  U.S. CONST. AMEND. XIV; N.J. CONST. ART. 1 ¶ 10.

POINT IV

THE SENTENCE IMPOSED FOR THE SECOND-DEGREE UNLAWFUL POSSESSION OF A WEAPON CONVICTION IS MANIFESTLY EXCESSIVE AND MUST BE REDUCED.

For the following reasons, we affirm defendant's convictions and sentences.

3

I.

To provide necessary background for our opinion we discuss only those portions of the trial and sentencing proceeding relevant to defendant's arguments on appeal. Detectives William Herrmann (Herrmann) and Anthony Castronova (Castronova) of the Paterson Police Department were on patrol at night in an unmarked vehicle. In two separate police vehicles behind them were Detective Jose Torres (Torres), another detective, as well as Sergeant Richard LaTrecchia (LaTrecchia), and a film crew from the "Cops" television show.

At approximately 11:50 p.m., Herrmann and Castronova noticed a group standing on the sidewalk near Market and Pennington Streets drinking alcoholic beverages. When they got out of their vehicle and approached the group to issue them summonses for drinking in public, the officers observed defendant pick up an orange bag when "paper folds wrapped in rubber bands fell out of the bag, onto the ground." Herrmann advised defendant that he was under arrest and instructed him to place his hands in the air, but defendant "disregarded [his] commands and ran into [a nearby] building."

Herrmann instructed Castronova to pick up the contents of the orange bag as he pursued defendant on foot. Herrmann pursued defendant up to the third floor of the building when defendant threw the bag on the ground, "and then just

4

laid down and gave up." Torres retrieved the orange bag and advised Herrmann that it contained a gun.

Defendant testified at trial that when the officers arrived on the scene, he ran into the building because he "was smoking and . . . got nervous" and had "problems with [his immigration] papers . . . [and did not] want to get any tickets in order to be able to renew them." Defendant admitted that at the time of the incident, he was a United States resident, but his passport was expired. He denied picking up or holding an orange bag when he ran that night and emphasized that he "never had knowledge of that bag[,]" that he had "never known of that . . . gun[,]" and denied ever possessing any of the drugs confiscated by police that evening. Defendant also claimed that after he was arrested, Torres was searching inside the building behind the stairwell and pulled a gun hidden underneath a traffic cone.

Defendant further testified that after Torres came out of the house, "he went to the back of his vehicle and started checking what was in the bag" then called another police unit to transport defendant. He stated that the "Cops" television crew was filming the events as they unfolded both inside and outside of the building, but they stopped at the second floor because officers were checking the roof above the porch area of the house.

Defendant stated that he exchanged words with LaTrecchia who purportedly told defendant he would strike him in the face when defendant kept asking to call his mother. When defendant was asked if he was familiar with fentanyl, he responded that he had "never known about it[,]" he "never touched any of that[,]" and did not "even know how that's used." He again emphasized that he "never had [the orange bag] with [him] . . . when [he] ran . . . into the house."

Defendant moved for judgment of acquittal with respect to the possession of a weapon for an unlawful purpose, resisting arrest by flight, and possession of crack cocaine charges. Regarding the unlawful purpose charge, the court noted that "the State argued that the unlawful purpose can be inferred . . . [as] [h]e had no . . . permit" and the gun "was found together with narcotics." The trial court further explained that the:

> jury could infer what that unlawful purpose was based on the circumstances surrounding the case, if they find the police officers to be credible, and believe that when he was taken into custody he had a firearm along with [CDS] that they could infer that his intent was to use that firearm for an unlawful purpose against another in either them taking the drugs from him or whatever the jury can determine based on the circumstances, the time of night, and all those other things that his intent was to use it against the person or property of another.

The court concluded that since "[t]here is no requirement under the elements of this offense that there be actual testimony[,]" and "viewing all the testimony in the light most favorable and all the favorable inferences that can be . . . drawn therefrom, a jury could reasonably find guilt on that charge beyond a reasonable doubt." The court therefore denied defendant's motion as to the unlawful purpose and resisting arrest by flight offenses but granted the motion as to the possession of crack cocaine and dismissed that charge.

During summations, defense counsel argued that the State's failure to produce the video from the "Cops" television show indicated that the police were "hiding something." Defense counsel also stated that "every officer that testified went over [Detective Herrmann's] report . . . [and had] an interest here because they . . . made an arrest." Finally, defense counsel emphasized that "anytime a police officer testifies, you know there's bias because he's testifying for the State."

In the State's summation, the prosecutor rebutted the defendant's argument that the police were biased and offered the following explanation to support the unlawful possession charge:

> So what's the logical inference here? He's bringing
> marijuana to smoke. It's probably in this jar. It is in
> this jar with the other narcotics. In this bag. Because
> you're carrying your bag with your stuff in it. And

> when you carry your bag in [and] your stuff with it, and you have drugs, so no one takes your drugs, you have to defend yourself.  Because you can't call the police exactly, right, and say someone took my drugs.  So you have a gun.

When charging the jury on the possession of a firearm for an unlawful purpose charge, the court stated that the State must prove that the weapon presented as evidence "is a firearm"; "defendant possessed the firearm"; that defendant had the "purpose to use it against the person or property of another"; and that his purpose "was to use the firearm unlawfully."  The court also explained, consistent with the State's contention that defendant "had an unlawful purpose in possessing the firearm because he had no legitimate purpose in possessing the weapon and did so without a permit" and that the unlawful purpose "may be inferred from all that was said or done and from all of the surrounding circumstances of this case."

During deliberations, the jury requested further clarification on the third and fourth elements of the unlawful purpose charge.  Specifically, the jury asked, "[h]ow do we understand the intent of the person who possesses an unregistered firearm as to potential harm to a person or property . . . [a]nd . . . will use said firearm unlawfully?"  Over defendant's objection, the court instructed the jury that "based upon the evidence presented to you, you heard

8

testimony in relation to the possession of fentanyl" and "[y]ou can extrapolate from the facts and circumstances in this case that the unlawful purpose of the weapon was to protect the fentanyl." The court further instructed that:

> [I]t's for you to decide that . . . . [Y]ou make a decision whether or not [defendant], in fact, possessed the . . . fentanyl. It's not for me to decide. It's for you to decide. And . . . whether the unlawful purpose was to protect that fentanyl, ladies and gentlemen. You can choose to find that that's not the case. That's within your purview. You are the fact finders. Whatever your recollection of the testimony is what controls. Not mine . . . .
>
> . . . .
>
> And so I wanted to clarify what you could extrapolate from the evidence. But, ultimately, it's for you to decide whether [defendant] possessed the fentanyl. And if you don't find that [defendant] possessed the fentanyl, that may [a]ffect your decision on the unlawful purpose. Right. But if you do find that that's there, that is what you can extrapolate from the evidence. And that would be your unlawful purpose. It is insufficient for you to find an unlawful [purpose] based solely on the fact that there was no permit to have the weapon.

At sentencing, the court noted that defendant's criminal history included "a couple of disorderly person's offenses" but he had no indictable offenses. The court also stated that defendant was not married, and his girlfriend was expecting

his first child. Finally, the court noted that defendant was not employed at the time of the incident.

The court found that aggravating factors three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that defendant will commit another offense") and nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring defendant and others from violating the law") were applicable "based on [defendant's] history or . . . background." The court also found that "to some extent" mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) ("[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense") was appropriate as defendant "has a couple of [m]unicipal [c]ourt matters, but, in essence, he has led a law-abiding life." The court determined that the aggravating factors outweighed the mitigating factors.

## II.

We first consider defendant's contention that the court gave an erroneous jury instruction on the possession of a firearm for an unlawful purpose charge. Defendant specifically argues that the court's instruction was defective because it "merely advised the jury of the State's contention that [he] possessed the firearm unlawfully and therefore had no lawful purpose." Defendant further

A-1127-18T2

argues that the trial court erred when it "provided the jury with an unlawful purpose that was different than the purpose provided by the State" instead of "instruct[ing] the jury that it was the State's burden to prove [defendant] possessed an unlawful purpose for the handgun." We disagree with all of these contentions.

Correct and appropriate jury charges are essential to a fair trial. State v. Baum, 224 N.J. 147, 158-59 (2016). The court must "'instruct the jury as to the fundamental principles of law which control the case [including] the definition of the crime, the commission of which is basic to the prosecution against the defendant.'" State v. McKinney, 223 N.J. 475, 495 (2015) (alteration in original) (quoting State v. Green, 86 N.J. 281, 288 (1981)).

In reviewing jury instructions, we consider the challenged portion of the instruction in the context of the entire charge to determine whether the overall effect was misleading or ambiguous. Id. at 494. In situations where a trial court correctly instructs the jury concerning certain components of the charge, "'[t]he test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law.'" Id. at 496 (alteration in original) (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997)).

11

Conviction for second-degree possession of a firearm for an unlawful purpose requires the State to prove beyond a reasonable doubt:

> (1) the object possessed was a "firearm" within the meaning of N.J.S.A. 2C:39-1(f); (2) the firearm was possessed by defendant as defined in N.J.S.A. 2C:2-1(c); (3) the defendant's purpose in possessing the firearm was to use it against the person or property of another; and (4) the defendant intended to use the firearm in a manner that was unlawful.
>
> [State v. Diaz, 144 N.J. 628, 635 (1996).]

A purpose to use a weapon unlawfully must be proved particularly and it cannot be inferred from proof that the weapon was unlicensed. See State v. Dixon, 114 N.J. 111, 113 (1989). A conviction of an underlying charge involving the gun – assault, robbery, rape – usually "supplies the factual basis for an inference of unlawful purpose in possessing the gun." State v. Jenkins, 234 N.J. Super. 311, 315 (App. Div. 1989). However, "if the possession charge stands alone, or if acquittal of the accompanying charge erases the identification of the unlawful purpose, the court may not permit the jury to convict on the basis of speculation as to what possible purposes qualify as unlawful." Ibid.

Accordingly in such circumstances, a jury instruction "must include an identification of such unlawful purposes as may be suggested by the evidence and an instruction that the jury may not convict based on their own notion of the

12

unlawfulness of some other undescribed purpose." Id. at 316; State v. Williams, 168 N.J. 323, 340 (2001); State v. Petties, 139 N.J. 310, 319-20 (1995). Identification of the unlawful purpose by the judge is critical because a jury is not qualified to conclude, without assistance, which purposes for possessing a gun are lawful and which are unlawful. Petties, 139 N.J. at 320.

Here, the court adhered in large part to the model jury instructions with respect to the unlawful possession charge. Model Jury Charges (Criminal), "Possession of a Firearm With a Purpose to Use it Unlawfully Against the Person or Property of Another (N.J.S.A. 2C:39-4(a))" (rev. Oct. 22, 2018). Although the court did not initially define specifically the "unlawful purpose," and instead instructed the jury that "the State contends that the defendant had an unlawful purpose in possessing the firearm because he had no legitimate purpose in possessing the weapon and did so without a permit," its later instruction precisely described the unlawful purpose consistent with relevant case law. Indeed, the court instructed the jury that it was their decision as to "whether or not [defendant] . . . possessed the . . . fentanyl" and "whether the unlawful purpose was to protect that fentanyl."

Taken as a whole, the instructions were proper as the trial court correctly instructed the jury that it might infer an unlawful purpose from the

circumstances. Further, it correctly advised the jurors that they could not rely on their own notions of the unlawfulness of some other undescribed purpose of the defendant. And, the court did identify for the jury the unlawful purpose that the jury could find from the evidence presented. Accordingly, the court clarified that the jury could infer defendant's unlawful purpose in possessing the handgun, based on the evidence presented at trial, was to protect the drugs he had in his possession. Contrary to defendant's assertion, the State made that specific argument during summations and thus, the court did not "provide[] the jury with an unlawful purpose that was different than the purpose provided by the State."

## III.

Defendant argues in his second point that the trial court improperly denied his motion for a judgment of acquittal. More specifically, defendant contends the State failed to present evidence indicating that he possessed a handgun with an unlawful purpose as "the handgun was not loaded" and "no bullets were found in the handgun." He concludes that "[a]bsent any evidence as to [his] alleged unlawful purpose, the State has failed to prove anything beyond unlawful possession of a weapon." We are not persuaded.

14

We review de novo the denial of defendant's motion for judgment of acquittal, applying the same standard used by the trial judge. State v. Dekowski, 218 N.J. 596, 608 (2014). We consider:

> whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 459 (1967).]

Under Rule 3:18-1, a court is "not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State." State v. Muniz, 150 N.J. Super. 436, 440 (App. Div. 1977). "If the evidence satisfies that standard, the motion must be denied." State v. Spivey, 179 N.J. 229, 236 (2004).

Here, Torres testified that a substantial quantity of narcotics was recovered during the arrest, including fentanyl, as well as a working, but unloaded, handgun. As noted, the State argued in its closing that the logical inference based on the evidence presented was that when "you have drugs, so no one takes your drugs, you have to defend yourself." The State further emphasized that "the unlawful purpose . . . was having this weapon while [defendant] was transporting narcotics." The jury could reasonably infer from

15

the testimony and evidence presented that defendant carried the weapon to protect himself and the drugs he had in his possession. See, e.g., Petties, 139 N.J. at 316 ("If a search were to disclose large quantities of drugs and cash in a home, one might infer that any handguns found in the home were possessed for the unlawful purpose of aiding drug trafficking.").

As to the fact that the gun was unloaded at the time of his arrest, we have stated that "the loaded or unloaded status of a firearm has not been a factor in offenses involving weapons." State v. Jules, 345 N.J. Super. 185, 191 (App. Div. 2001). In Jules, a defendant argued an unloaded firearm in the commission of an attempted robbery should not warrant imposing a sentence pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2 (NERA). Id. at 187. We found a "firearm to be no less 'ordinarily capable' of injury by virtue" of being unloaded, id. at 192, and within the definition of a deadly weapon under NERA. Ibid. Moreover, in State v. Bill, we determined that "the Legislature intended that both loaded and unloaded firearms be considered when ascertaining guilt for pointing a firearm at another." 194 N.J. Super. 192, 198 (App. Div. 1984).

Defendant's possession of a firearm, despite it being unloaded, does not negate its ability to be used for his protection while in possession of illegal drugs. Indeed, defendant could still utilize the operable handgun to threaten

16

third parties who would be unaware of its unloaded status.  Therefore, the trial evidence was sufficient to permit the jury to reasonably infer the specific unlawful purpose and defendant's motion for a judgment of acquittal on this count was properly denied by the court.

IV.

Defendant contends in his third point that "[t]he prosecutor's questioning . . . was improper and deprived him of his right to due process and a fair trial and had the clear capacity to produce an unjust result."  He specifically claims that during the State's cross-examination the prosecutor improperly asked him whether:  1) his friend, Carlos Rivera, who was also a defense witness, was "lying . . . when he testified he was able to see the bag in the common area"; and 2) "it would be a lie to say that [defendant was] respectful of [LaTrecchia] as well."  Defendant further argues that his conviction should be reversed because the prosecutor improperly vouched for witnesses' credibility during closing arguments.  Again, we disagree.

"A prosecutor must 'conscientiously and ethically undertak[e] the difficult task of maintaining the precarious balance between promoting justice and achieving a conviction,' ensuring that at all times his or her 'remarks and actions [are] consistent with his or her duty to ensure that justice is achieved.'"  State v.

17

Jackson, 211 N.J. 394, 408 (2012) (alterations in original) (quoting State v. Williams, 113 N.J. 393, 447-48 (1988)). "Whether particular prosecutorial efforts can be tolerated as vigorous advocacy or must be condemned as misconduct is often a difficult determination to make. In every instance, the performance must be evaluated in the context of the entire trial, the issues presented, and the general approaches employed." State v. Negron, 355 N.J. Super. 556, 576 (App. Div. 2002).

"[P]rosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive [the] defendant of a fair trial." State v. Timmendequas, 161 N.J. 515, 575 (1999). "To justify reversal, the prosecutor's conduct must have been clearly and unmistakably improper, and must have substantially prejudiced [the] defendant's fundamental right to have a jury fairly evaluate the merits of his [or her] defense." State v. Nelson, 173 N.J. 417, 460 (2002) (alterations in original) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)). Moreover, "a failure to make a timely objection indicates defense counsel's belief that the prosecutor's remarks were not prejudicial at the time they were made," State v. Josephs, 174 N.J. 44, 125 (2002), and "deprives the court of the opportunity to take curative action." Timmendequas, 161 N.J. at 576. Thus, "[g]enerally, if no objection was made

to the improper remarks, the remarks will not be deemed prejudicial." State v. R.B., 183 N.J. 308, 333 (2005) (quoting State v. Frost, 158 N.J. 76, 83 (1999)).

Here, the prosecutor asked whether defendant was "lying . . . when he said he was able to see the bag . . . ." Before defendant could answer, his counsel objected, and the prosecutor continued with his cross-examination without eliciting a response. The State also asked defendant whether it was "[the truth] or a lie that [defendant] [was] respectful to [Sergeant LaTrecchia]." Defendant responded, without objection, that "[he] did have [an] exchange of words with [LaTrecchia] and [LaTrecchia] told [defendant] that he was going to hit [him] if [defendant] didn't shut up."

We conclude none of the prosecutor's statements were "clearly and unmistakably improper" nor did they "substantially prejudice[] [the] defendant's fundamental right to have a jury fairly evaluate the merits of his [or her] defense." Nelson, 173 N.J. at 460. With respect to the first question, the prosecutor simply attempted to impeach defendant's direct testimony and defendant never provided a response.

As to the second statement, the lack of a timely objection is a strong indication of "defense counsel's belief that the prosecutor's remarks were not prejudicial at the time they were made." See Josephs, 174 N.J. at 125. Further,

19

there is nothing in the record to suggest that whether defendant was respectful of police during his arrest had any bearing on whether he was in possession of the gun and drugs, and resisted arrest by fleeing from police.

Defendant's reliance on State v. Bunch, 180 N.J. 534 (2004) is misplaced. In Bunch, our Supreme Court found objectionable "the following unobjected-to question [posed by the prosecutor] during [the defendant's] cross-examination: 'So basically you want this jury to believe that everything that the officers came in here and testified to is untrue?'" 180 N.J. at 549. The Court "agree[d] with defendant that the assistant prosecutor should not have asked defendant to assess the credibility of another witness." Ibid.; see also State v. Frisby, 174 N.J. 583, 594 (2002) (explaining that "the mere assessment of another witness's credibility is prohibited"). The Court, nevertheless, held that "in view of the substantial amount of evidence of defendant's guilt and the trial court's instruction to the jury that it must determine the witnesses' credibility, we conclude that the improper statement was not 'so egregious that it deprived defendant of a fair trial.'" Bunch, 180 N.J. at 549 (quoting State v. Ramseur, 106 N.J. 123, 322 (1987)).

Here, the objectionable statements did not deprive defendant of a fair trial. The jury considered a wealth of evidence, including defendant's testimony, and

concluded based on the overwhelming evidence that defendant possessed fentanyl, a weapon unlawfully, and fled from the police.

We reach a similar conclusion with respect to defendant's claim that he was deprived of a fair trial as a result of the prosecutor improperly "vouching for the truthfulness of the State's witnesses." Specifically, defendant asserts that the prosecutor "crossed the line that separates forceful from impermissible closing argument" and that the State "continued to impinge upon the province of the jury by bolstering the credibility of [its] witnesses at closing." We disagree.

Again, there was no objection to the prosecutor's comments. See R.B., 183 N.J. at 333. Further, the State's remarks at closing merely responded to defendant's counsel's that the police were lying and thus did not constitute improper vouching for the police officers' credibility as witnesses. Rather, the prosecutor's comments were legitimate inferences within the factual parameters of the case as LaTrecchia testified that the Paterson police director ordered his unit to have the "Cops" television crew ride with them that night, and the jury could conclude the defendant's version of events was unreasonable.

In light of the lack of a timely and proper objection to the State's remarks at closing, defense counsel's own arguments questioning the credibility of the

police officers, and the court's instructions to the jury on two occasions that it was their responsibility to judge the credibility of the witnesses, we conclude reversal of defendant's convictions is not warranted.

V.

Finally, defendant argues that his aggregate seven-year prison term with a forty-two-month parole disqualifier is "manifestly excessive" and the result of the court overvaluing the aggravating factors and the failure to apply applicable mitigating factors. He specifically contends that the court failed to consider mitigating factors one, "[t]he defendant's conduct neither caused nor threatened serious harm," N.J.S.A. 2C:44-1(b)(1), and eleven, that "[t]he imprisonment of the defendant would entail excessive hardship to himself or his dependents." N.J.S.A. 2C:44-1(b)(11). Further, defendant asserts that the court's application of mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), is inconsistent with the court's application of aggravating factors three, N.J.S.A. 2C:44-1(a)(3), and nine, N.J.S.A. 2C:44-1(a)(9). We disagree.

We review criminal sentences for a "clear abuse of discretion." State v. Roth, 95 N.J. 334, 363 (1984). We are bound to uphold the trial court's sentence unless "(1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found . . . were not based upon competent and credible

22

evidence; or (3) 'the application of the guidelines . . . makes the sentence clearly unreasonable so as to shock the judicial conscience.'" State v. Fuentes, 217 N.J. 57, 70 (2014) (quoting Roth, 95 N.J. at 364-65).

The court's obligations when sentencing a defendant are clear. A sentencing court must determine which, if any, aggravating and mitigating factors apply, and balance those found applicable. Id. at 72-73; see also N.J.S.A. 2C:44-1. Once the court has balanced the applicable factors, it "may impose a term within the permissible range for the offense." State v. Bieniek, 200 N.J. 601, 608 (2010). "At the time sentence is imposed the judge [must] state reasons for imposing such sentence . . . [and] the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence . . . ." R. 3:21-4(g).

Defendant's first argument that the court did not adequately consider mitigating factor eleven is without merit as the record does not support the conclusion that his imprisonment will cause an "excessive hardship" on his family under N.J.S.A. 2C:44-1(b)(11). See State v. Dalziel, 182 N.J. 494, 505 (2005). At no time during the sentencing hearing did defendant suggest or demonstrate that he would be the sole provider for his unborn child or that there

were any special circumstances arising from his incarceration that would constitute such an "excessive hardship."

Additionally, defendant's claim that his conduct "neither caused nor threatened serious harm, satisfying mitigating factor one," is also without merit. The use and possession of drugs, along with the simultaneous possession of a working handgun, is clearly conduct that can "cause or threaten serious harm." Our Supreme Court elaborated on the seriousness of gun possession and noted in the context of whether to apply the Graves Act, that even if an individual has no intention to use a gun, "the possession of a firearm presents definable dangers. [Specifically,] it invites gun use by police or third parties, with attendant risks to all involved." State v. Des Marets, 92 N.J. 62, 69-70 (1983). Further, the individual's intent "could change under the pressure of ensuing events." Id. at 70. Here, defendant's possession of a working, but unloaded, handgun was a threat to others, and he could have invited gun use by the police. It also created the risk that his intent could change under the pressure of ensuing events, such as his resisting arrest by flight.

We also disagree with defendant's contention that the court's reliance on aggravating factors three and nine was inconsistent with its finding that mitigating factor seven applies. Those aggravating factors are supported by the

24

defendant's prior criminal history which includes two disorderly persons offenses. Further, the court acknowledged that defendant generally "has led a law-abiding life[,]" but afforded mitigating factor seven minimal weight as it stated the factor only applied "to some extent."

We therefore conclude that the judge followed the sentencing guidelines and there is sufficient credible evidence in the record to support the judge's findings on the aggravating and mitigating factors. We reject defendant's contention that the judge failed to adequately weigh the aggravating and mitigating factors. The sentence is reasonable and does not shock the judicial conscience. See Fuentes, 217 N.J. at 70 (quoting Roth, 95 N.J. at 364-65).

To the extent we have not addressed any of defendant's remaining arguments it is because we have determined that they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1127-18T2